LEMMEN v. ALLENDALE GRANGE NO. 421.

DEEDS—EJECTMENT—REVERSION—EVIDENCE—SUFFICIENCY.

In ejectment to recover possession of land deeded to a subordinate grange "for the purpose of building a grange hall and store, so long as the said parties of the second part shall use the said premises for said purpose," evidence examined, and *held*, sufficient to sustain a directed verdict in favor of defendant.

Error to Ottawa; Cross, J. Submitted January 30, 1918. (Docket No. 158.) Decided March 28, 1918. Rehearing denied June 20, 1918.

Ejectment by Lambertus Lemmen against Allendale Grange No. 421 and others. Judgment for defendants on a directed verdict. Plaintiff brings error. Affirmed.

*Louis H. Osterhous* and *Diekema, Kollen & Ten Cate,* for appellant.

*Smedley & Linsey,* for appellees.

MOORE, J. Prior to 1875, Allendale Grange No. 421 obtained a charter from the State Grange. On the 26th day of November, 1875, Allendale Grange No. 421 was incorporated under Act No. 68, Pub. Acts 1875, for a period of 30 years. Its corporate life was not renewed under this act, but in 1898, because it was claimed the prior charter had been lost or destroyed, another charter was granted to it by the State Grange. In 1876 and 1880 it received two deeds from Elizabeth Milne. Each deed provides, after setting forth the description, that it conveys to Allendale Grange No. 421 of the Patrons of Husbandry the land herein described:

"To have and to hold the said premises to the said

parties of the second part, to the sole and only proper use, benefit and behoof of the parties of the second part, for the purpose of building a grange hall and store, so long as the said parties of the second part shall use the said premises for said purposes; but when the said parties of the second part shall cease to use the said premises for a grange hall or co-operative store, the said premises shall revert back to the said party of the first part, her heirs and assigns, but the said parties of the second part reserve the right to sell or dispose of and remove or cause to be removed all the buildings that they may build on said premises, within one year and six months after they shall cease to use the said premises for said purposes."

The defendant corporation built a grange hall on the lot and used the same more or less regularly for a number of years for grange purposes.

Elizabeth Milne died, and on July 10, 1916, an order was made by the probate court of Ottawa county determining her heirs. On the 10th day of June, 1915, the heirs of Mrs. Milne deeded to plaintiff and John J. Walbrink the property which had been conveyed to the grange by Mrs. Milne, and on June 9, 1916, John J. Walbrink and plaintiff divided the property, Lemmen taking the east half and Walbrink the west half.

It is the claim of the plaintiff that he obtained his interest in the property because he was told by the master of the grange and others that the grange was dead, and his claim is that it was dead when he obtained his deed. A controversy arose between the plaintiff and the master of the grange and others, the details of which it is unnecessary to recite here, and the plaintiff, claiming to be the owner of the land, brought this action of ejectment. At the close of the testimony offered on the part of the plaintiff the court directed a verdict in favor of the defendants. The case is brought here by writ of error.

We quote from the brief of appellant:

"The law in this case will be discussed under three separate and distinct headings as follows:

"1. Was there a breach of condition which made the reverter clause in the deeds from Mrs. Milne effective?

"2. Is Lambertus Lemmen, the plaintiff, the proper party to commence this action?

"3. In whom did the title to the property vest when the corporation died?"

In our opinion a disposition of the first of these questions will make it unnecessary to discuss the others. It is true that the corporation brought into existence for the purpose of enabling the grange to conduct a co-operative store under Act No. 68 of the Public Acts of 1875, was ended in 1905, but the grange continued to hold meetings under its charter certainly until 1912, and defendants claim until now. From 1912 to 1915 these meetings were held infrequently, but the record shows that one was held November 16, 1912, one August 9, 1913, one January 20, 1914, and one November 12, 1915, since which time they have been held frequently. It is the claim of the plaintiff that the members lost interest in the grange, failed to pay their dues, were suspended; that the building was permitted to become dilapidated; that he was told by the master of the grange it was dead and that he was advised to buy the property, and that the want of activity on the part of the grange caused the property to revert to the heirs of Mrs. Milne, and that as he has succeeded to their rights he could maintain this ejectment suit.

The master of the grange, who was called as an adverse witness, admits he had a talk with the plaintiff in which he told him he thought the grange was dead and advised him to get into the game. He also says that he was mistaken; that it turned out that it was only dormant; that, while the members had failed to pay their dues promptly and some of them had been suspended, when plaintiff got his deed there were 13

members of the grange who had not been suspended. The by-laws of the State grange were in evidence. They show that the State grange under existing conditions might have forfeited the charter of the subordinate grange, but it did not do so. On the contrary, on November 20, 1915, the 13 members who had not been suspended met an officer of the State grange, paid certain dues and the subordinate grange was at that time revived, as some designated it, or, as others stated it, was reorganized. Its membership increased so that at the time of the trial it had upwards of 30 members. All of the time it had in its hall its charter, an organ, chairs, tables and its usual lodge furniture.

We think it may be stated as a fact that the grange had not "ceased to use the said premises for a grange hall" so that the title to the property reverted back to Mrs. Milne or her heirs and assigns.

Judgment is affirmed, with costs.

OSTRANDER, C. J., and BIRD, STEERE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.