PALMER *v.* PATRONS' MUTUAL FIRE INSURANCE CO. OF MICHIGAN.

1. INSURANCE—MUTUAL COMPANY — ARBITRATION — AWARD FINAL WHERE SO AGREED.

Where members of a mutual fire insurance company provide a board or tribunal to settle differences which may arise between the association and its members and making its decision final, a member who accepts a contract of insurance therein is bound by his agreement in the absence of waiver, or refusal to act or pay an· award on

the part of the association, and the courts are, as a general rule, without jurisdiction to relieve therefrom.

2. SAME—UNREVOKED AWARD BAR TO ACTION AT LAW.

Where plaintiff member of a mutual fire insurance company submitted his claim to arbitration, as provided in his policy, and the award of the arbitrators in favor of the association stands unrevoked, he is precluded from maintaining an action at law, since said award may not be attacked collaterally; his remedy, if any, being in equity to set aside said award on the ground of fraud, etc.

3. EQUITY—JURISDICTION—SETTING ASIDE AWARD FOR FRAUD.

A court of equity has jurisdiction over awards to restrain enforcement thereof and to set them aside in the ordinary cases of fraud, corruption, and mistake, or other extraneous causes going to their validity.

4. BENEFICIAL ASSOCIATIONS — INSURANCE — MUTUAL COMPANY — UNREVOKED AWARD BAR TO ACTION AT LAW.

To the extent that the case of *Dick* v. *International Congress*, 138 Mich. 372, may be construed as authority for the proposition that one who has stipulated for, and submitted his case to, an award may ignore it and resort to an action at law, it is overruled.

Error to Lapeer; Williams (William B.), J.    Submitted October 26, 1921.    (Docket No. 27.)    Decided February 8, 1922.

Assumpsit by George J. Palmer against the Patrons' Mutual Fire Insurance Company of Michigan, Limited, on a policy of insurance.    Judgment for plaintiff on a directed verdict.    Defendant brings error.    Reversed.

*Kinnane, Black & Leibrand,* for appellant.

*B. F. Reed,* for appellee.

STEERE, J.    Plaintiff recovered a judgment on directed verdict in the Lapeer county circuit court against defendant on an insurance policy it had issued to him covering his dwelling.    Defendant is a domestic

farmers' fire insurance company incorporated under Act No. 262, Pub. Acts 1895 (2 Comp. Laws 1915, § 9586 *et seq.*). Plaintiff's policy was issued February 2, 1911. The fire occurred March 6, 1916. Plaintiff promptly gave notice of his loss to the officers of defendant and pursuant to its articles of association an adjusting board of three members was appointed by its president and secretary, one of its directors named Bartlett, with two others named Brown and Laidlaw as members of plaintiff's own and a nearby grange. This board met on May 13, 1916, and adjusted the loss at $600. No question is raised as to the amount of the adjustment or honesty of the loss. Soon thereafter defendant's secretary gave notice of an appeal from this adjustment to its board of arbitration which consisted of three members elected by its board of directors. Hearing was had before this board of arbitration on June 13, 1916, which reversed the decision of the adjusting board and disallowed the claim on the sole ground that plaintiff had allowed his subordinate grange dues to remain unpaid for more than nine months preceding the time of his loss, and his policy was thereby suspended under section 25 of defendant's by-laws which provides as follows:

"Every member shall keep his subordinate grange dues fully paid up and any member who shall permit or allow his dues to remain unpaid for the space of nine months suspends his policy for the time in which his dues may thus remain unpaid, and the company shall not be liable for any loss or damage sustained while his dues are more than nine months in arrears."

It is undisputed that plaintiff was a member in good standing of subordinate Oxford grange at the time the policy was issued to him, and never was delinquent in payment of any dues assessed against him by the same. This grange did, however, cease to function and became inactive or dormant some years

before his loss occurred, during which time no officers were elected, nor dues assessed against its members. Its charter is not shown to have been forfeited nor any of its members expelled or suspended during that time.    Defendant continued regular annual assessments on plaintiff's insurance which he promptly paid on receipt of such notice.    Its articles of association required an annual assessment roll, dated September 25th, to be made in which each policy holder should be assessed ratably to cover all losses, expenses, etc., of the company, his assessment being made payable during October following.    On July 31, 1919, over three years after rejection of his loss, defendant canceled plaintiff's policy for nonpayment of his 1918 assessment.    Defendant's secretary who had appealed from the amount of its adjusting board to its board of arbitration in May, 1916, admitted that the board of arbitration had refused to allow plaintiff's loss when he levied the 1916 assessment against plaintiff and sent him notice thereof, that he had collected from him the 1916-1917 assessments which were retained and no offer was ever made to return the assessments plaintiff had paid.

In this case the facts are undisputed.    Had plaintiff withdrawn or taken a demit from his local grange, affiliated with no other and thereafter paid no grange dues, the case would seem to quadrate in facts and principle with that of *Laxton* v. *Insurance Co.*, 168 Mich. 448, where plaintiff withdrew from his grange and paid no further dues but continued to pay his insurance assessments until after he suffered a fire loss, which defendant refused to pay because the insured had not kept up his dues in a local grange and retained all assessments he had paid up to the time of his loss.    In this case, however, plaintiff never severed his connection with his local grange, the records of which show him a member since 1904, was

not expelled or suspended by it, and had paid all dues it ever assessed against him. He had regularly paid his insurance assessments to defendant, including two annual assessments made against him by it after his fire loss, which it accepted and retained. Although it is possible the State grange might have forfeited the charter of his local grange owing to its dormant condition it did not do so. While yet retaining its charter the subordinate grange could at any time have resumed its functions by the action of its members who were in good standing. *Lemmen* v. *Allendale Grange,* 201 Mich. 179.

Plaintiff contends that section 25 of defendant's by-laws does not apply to the situation presented here, because plaintiff had kept all subordinate grange dues fully paid, and his dues were not "nine months in arrears" when his loss occurred, or if it does apply the *Laxton Case* is analogous to its facts and controlling in principle. The learned circuit judge in directing a verdict apparently adopted the latter view, saying in part:

"The company could waive this by-law and the levy and retention of assessments after the knowledge of the defendant constitutes a waiver. It was thus the duty of the arbitrators not to reject the claim because of plaintiff's failure to pay his grange dues. The decision of the Supreme Court was binding on them and their failure to give it effect would invalidate their award. It would result in a legal fraud on the plaintiff."

In the *Laxton Case* the plaintiff paid defendant one year's assessment after his loss which it tendered back after suit was begun, which he refused. In this case plaintiff paid two years' assessments which defendant retained and made no offer of return. In the *Laxton Case* plaintiff contended that the defendant through its secretary knew of what was done by plaintiff and did not cancel his policy, but after this knowledge

came to it assessed plaintiff and collected the assessment which it still retained.   The trial court found there were issues of fact on those contentions and submitted them to the jury.   On the question of waiver this court there said:

"The fact is not in dispute that after it is claimed the policy became void, and after, according to the finding of the jury, the secretary had notice of the facts, that assessments were made and collected, which assessments are yet retained by the defendant.   Under these circumstances, we think the judgment should stand" (citing cases).

In the instant case defendant pleaded in bar an award by its appellate board of arbitration provided for in article 5 of its articles of association, which by article 6 is made binding and final on appeals taken from an adjusting board to the exclusion of litigation by any loser.   Under this plea it is contended broadly that the courts were closed to plaintiff, and when his counsel sought to attack the award on the ground of fraud objection was interposed for the further reason that a court of law had no jurisdiction to disregard or set aside an award because fraudulently made.

Although not made clear in the opinion, it may be noted that a similar objection was made in the *Laxton Case* and properly overruled as the record of the case discloses defendant early denied all liability, thereby waiving its right to arbitration, and none was had. Apparently profiting by that experience, defendant's secretary wrote plaintiff in this case, on April 23, 1916, acknowledging notice of loss, advising papers for adjustment had been sent to the nearest director who would give notice where and when the adjusting board would meet, and referring to the matter of plaintiff's grange dues said in part as follows:

"I am of the opinion that it is not for the secretary or the officers of the company to determine what effect

it has on the liability of the company, but it is for the adjusting board to determine this matter, so the adjusting board is being appointed the same as if your grange dues were paid up to within nine months and in so doing we do not wish to be understood as waiving any provisions of the policy contract or any rights of the company.

"Fraternally yours,
                    "E. A. HOLDEN."

When the adjusting board met plaintiff appeared, submitted to an examination and was heard.    The adjusting board determined by a majority that the matter of plaintiff's grange dues had no effect on the liability of the company, fixed the valuation of the property destroyed by fire and made him an award of $600.  Brother Bartlett, a director and the president of defendant, was a member of this adjusting board, appointed by its "president and secretary" under section (b) of article 5 of its articles of association.   On May 5, 1916, he wrote defendant's secretary "inclosing the result of our attempt to adjust the Palmer loss today," and asking "what will be your plan of action regarding this matter?"   On May 16, 1916, the secretary wrote Worthy Brother Palmer a short letter, fraternally signed, saying:

"I have the adjustment of your loss from Brother Bartlett.   I am appealing from the findings of the adjusting board to the arbitration board."

—giving the date and place of its meeting.  Plaintiff attended that meeting, was heard and submitted his side of the contention, with the result before noted. In his application for insurance plaintiff signed amongst other things the following agreement:

"I accept this insurance subject to the articles of association, the rules and regulations and by-laws of said company, now in force or that may hereafter be in force."

This and other courts have more than once held that where members of a voluntary society provide a board or tribunal to settle differences which may arise between the association and its members and making its decisions final, a member who accepts a contract of insurance as above indicated is bound by his agreement in the absence of waiver, refusal to act or pay an award on the part of his association, and the courts are, as a general rule, without jurisdiction to relieve. *Patrons' Mut. Fire Ins. Co.* v. *Attorney General,* 166 Mich. 438; *Bone* v. *Insurance Co.,* 215 Mich. 396. This is not inconsistent with the rule that such an association may waive arbitration by act or word, in which case the courts are open to the aggrieved member.

In the instant case plaintiff submitted to an award and exhausted that remedy. Leaving the award against him standing, he commenced an action at law in assumpsit to recover on his policy of insurance, and when the award was interposed as a defense sought to attack it collaterally on the ground of fraud. This he may not do. His primary remedy is by direct proceedings against the award in a court of equity where rests special jurisdiction in matters of fraud, accident, mistake, etc. In this State distinct equitable jurisdiction over awards is not wanting, as in certain code States where the distinction between law and chancery courts has been abolished. *Brown* v. *Kalamazoo Circuit Judge,* 75 Mich. 274 (5 L. R. A. 226).

"A court of equity cannot abdicate its duty or submit its conscience to what a jury might do in any case, not even that of an individual against a corporation. Under the Constitution and laws of this State, a court of law is not the proper forum to determine whether an award under an arbitration agreed to by the parties thereto, was corruptly and fraudulently made. Courts of equity alone are clothed with the power to set them aside." *Michels* v. *Underwriters' Ass'n,* 129 Mich. 417.

*Vide,* also, *Beam* v. *Macomber,* 33 Mich. 127; *Hembeau* v. *Knights of Maccabees,* 101 Mich. 161 (49 L. R. A. 592, 45 Am. St. Rep. 400) ; *Fillmore* v. *Knights of Maccabees,* 109 Mich. 13; *Raymond* v. *Insurance Co.,* 114 Mich. 386; *Kearney* v. *Insurance Co.,* 126 Mich. 246; *Early* v. *Ingham Circuit Judge,* 166 Mich. 517; *Early* v. *Tussing,* 182 Mich. 314; *Patrons' Mut. Fire Ins. Co.* v. *Pagenkoff,* 213 Mich. 157; *Howe* v. *Insurance Co.,* 216 Mich. 560.

"A court of equity has jurisdiction over awards to restrain enforcement thereof and to set them aside in the ordinary cases of fraud, corruption, and mistake, or other extraneous causes going to their validity. Any facts which show it to be against conscience to enforce the award, or the judgment upon it, and which could not have been taken advantage of at law, will authorize equitable interference."     5 C. J. p. 195.

In contravention of this well settled general principle counsel for plaintiff cites and relies on *Dick* v. *International Congress,* 138 Mich. 372, decided by a closely divided court, which involved primarily an award predicated solely on the certificate of a physician containing information obtained from his patient which was essential to enable him to prescribe, in its nature testimony which the law forbids in positive terms.    In neither case cited to sustain the majority view upon the question before us is the jurisdiction of a court of law to set aside a completed award decided, discussed, or, so far as appears, raised.    In *Rose* v. *Order of Patricians,* 126 Mich. 577, it was simply held that a beneficiary in a fraternal insurance order who was denied the remedy by appeal provided for in the ordinances of the organization may maintain an action at law.    *Lamson* v. *City of Marshall,* 133 Mich. 250, was an action on a contract for construction of a sewer in which the defense was made that plaintiff had not furnished a required certificate

showing completion of the work and satisfaction of all claims for labor and material.   The *Dick Case* seems to be based upon decisions which do not discuss or decide the question of jurisdiction raised here and, to the extent that it may be construed as authority for the proposition that one who has stipulated for and submitted his case to an award may ignore it and resort to an action at law, it is overruled.

The judgment is therefore reversed, with costs, and the case remanded for a new trial or such other proceedings as counsel may desire and the court determine in harmony with this opinion.

FELLOWS, C. J., and WIEST, STONE, CLARK, BIRD, SHARPE, and MOORE, JJ., concurred.